**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

MINSUNG CHO, ISRAEL NO

      Plaintiffs,

v.

THE QUI INC. and ELLIE IL YOUNG
SHIN,

      Defendants.

1:23-cv-1480 (PTG/JFA)

**JURY TRIAL DEMANDED**

**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES'**
**JOINT NOTICE OF SETTLEMENT, OR IN THE ALTERNATIVE,**
**JOINT MOTION FOR SETTLEMENT APPROVAL**

Pursuant to the Court's May 15, 2024, Order, Dkt. 36, the Parties respectfully submit this

joint notice of settlement, or in the alternative, joint motion for settlement approval. As the Parties

stated in their May 15, 2024, conference with the Court, they have reached a fair, reasonable and

adequate settlement for the two Plaintiffs in this Fair Labor Standards Act ("FLSA") case, Minsung

Cho and Israel No. Furthermore, because the Parties have agreed to enter a joint stipulation of

dismissal *without* prejudice, it is the Parties' position that the Court does not need to approve the

settlement agreement. As the Eastern District of Virginia has explained, "where the parties

stipulate to dismissal <u>without</u> prejudice, the plaintiff is not foreclosed from refiling any FLSA

claim at a later time, and thus, such a stipulated dismissal remains self executing without

contravening the FLSA." *Davis v. BT Americas Inc.*, No. 2:16-cv-0206, 2017 WL 11507143, at

*1 (E.D. Va. April 13, 2017) (quoting *Appleby v. Hickman Construction, inc.*, No. 1:12-cv-0237,

2013 WL 1197758, at *1 (N.D. Fla. Mar. 25, 2013)) (alternation omitted) (emphasis in original).

*See also Martin v. Harrah's NC Casino Company, LLC*, No. 1:19-cv-0185, 2021 WL 966029, at

1

*1 (W.D.N.C. Mar. 15, 2021) ("[A]n FLSA claim may only be dismissed *with* prejudice with . . . judicial approval of a settlement between the parties. Nevertheless, courts let parties stipulate to the dismissal of FLSA claims *without* prejudice even if the parties lack approval.") (emphasis added).

This rule is in line with this Court's case law on FLSA settlement approval, which explains that settlements must be approved by a court "before a private litigant may compromise an FLSA claim." *Davis v. Kayree, Inc.*, No. 4:19-cv-0055, 2020 WL 1479035, at *2 (E.D. Va. Mar. 24, 2020); *see also Smith v. Q.E.D. Sys., Inc.*, No. 2:19-cv-0215, 2020 WL 975368, at *1 (E.D. Va. Feb. 11, 2020), report and recommendation adopted, No. 2:19-cv-0215, 2020 WL 974416 (E.D. Va. Feb. 28, 2020); *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *8 (E.D. Va. Sept. 28, 2009) (all quoting *Lynn's Food Stores, Inc. v. United States By and Through U.S. Dep't of Lab.*, 679 F.2d 1350, 1352 (11th Cir. 1982). A Plaintiff who has dismissed an FLSA claim *without* prejudice, however, has not compromised that claim because he "is not foreclosed from refiling the FLSA claim at a later time." *Martin*, 2021 WL 966029, at *1. *See also PerezNunez v. N. Broward Hosp. Dist.*, 609 F. Supp. 2d 1319, 1320–21 (S.D. Fla. 2009) ("If the dismissal sought by the Parties were without prejudice, the Court would agree that approval would not be necessary, since Plaintiff would not be foreclosing her ability to vindicate any FLSA claim she may have by refiling at a later time.").

Nevertheless, in the interest of efficiency, and because the agreement reflects a fair and reasonable settlement of a *bona fide* FLSA dispute, the Parties further submit the below briefing for the Court's consideration, in the event that the Court deems approval necessary. Attached in support of this briefing as Exhibit A is the Declaration of Molly A. Elkin ("Elkin Declaration"), Plaintiffs' lead counsel.

## I.    Claims Asserted and Procedural History

Plaintiffs Cho and No each were employed as servers in Defendants' Qui Korean Barbecue restaurants. Plaintiff Cho filed his initial complaint on October 30, 2023, Dkt. 1, alleging that Defendants failed to properly calculate his overtime rate and had improperly retained his tips under 29 U.S.C. § 207(a)(1), 29 U.S.C. § 203(m)(2)(B), and Virginia Code §§ 40.1-29.2 & 40.1-29(J). In their Answer, Defendants denied the factual bases for these claims and asserted several defenses, including that they had acted in good faith; that they had not improperly kept tips; and that they had properly calculated Plaintiff's overtime. *See generally* Dkt. 12; *id.* at 11–12.

On January 22, 2024, Plaintiffs sought leave to file their First Amended Complaint ("FAC"), adding opt-in Plaintiff Israel No along with additional allegations relating to an improper tip pooling arrangement whereby Defendants required Plaintiffs to participate in the tip pool alongside assistant managers. Dkt. 19. The motion was granted, and Plaintiffs filed their FAC on January 23, 2024. Dkt. 21. Plaintiffs subsequently, on January 31, 2024, moved for conditional certification, seeking to send notice to Defendants' employees across their four stores. Dkt. 22. Defendants Answered Plaintiffs' FAC on February 13, 2024, similarly denying Plaintiffs' allegations and raising defenses, and, on February 14, 2024, opposed Plaintiffs' motion for conditional certification. Dkts. 29–30.

Following a hearing on February 29, 2024, the Court denied Plaintiffs' motion without prejudice, instructing the Parties to engage in 60 days of preliminary discovery on the matter of conditional certification. Dkts. 32–33. The Parties engaged in such discovery, and at the same time, engaged in full blown merits discovery, exchanging interrogatories, document requests and responses including payroll and timekeeping records.  Plaintiffs took depositions of Defendant Ellie Il Young Shin, and an FRCP Rule 30(b)(6) witness on multiple topics.  Defendants took the

depositions of Plaintiffs Cho and No. Elkin Decl. ¶ 20. From mid-April and into early May, the Parties engaged in good faith settlement discussions, ultimately executing a signed settlement agreement on May 13, 2024. *Id.* ¶ 32.

## II.    The Agreement Between the Parties is Fair, Adequate, and Reasonable

### a.    Terms of the Proposed Settlement

It is Defendants' desire that the financial terms of the settlement not be placed on the public docket and a confidentiality provision has been made a material part of the settlement agreement between the parties. As such, Defendants request that the settlement agreement be submitted for *in camera* review in the event this Court deems it necessary to review and approve the agreement. Plaintiffs do not oppose Defendants' request for *in camera* review.

Various Courts in the Fourth Circuit have allowed *in camera* review and approval of FLSA settlements where confidentiality is made a material part of the agreement provided there is also a showing that that the "settlement reflects a reasonable compromise over bona fide disputes." *Belcher v. CHA Cos.*, No. 3:10-cv-420, 2011 U.S. Dist. LEXIS 39063 at *1-2 (E.D. Va  Mar. 16, 2011); *see also Morris v. Southern Concrete & Constr., Inc.*, No. 8:16-cv-01440-DCC, 2019 WL 2083055, at *1 (D.S.C. May 13, 2019); *Rosen v. Halperns' Steak &Seafood Co.*, No. 4:18-cv-00857-RBH, 2019 WL 12105542 at *1 n. 1 (D.S.C. Jan. 15, 2019); *Corominas v. ACI Holdings, LLC*, No. 2:!5-cv-4372-PMD, 2016 WL 10520235 at *1 n.2 (D.S.C. Oct. 27, 2016); *In re Family Dollar FLSA Litig.*, 2012 U.S. Dist LEXIS 35303 at *11-12 (W.D.N.C. 2012); *Weller v. Dolgencorp, Inc.*, No. 3:09-cv-22, 2011 WL 121914 at *1 (N.D.W. Va. Jan. 13, 2011).  Further, this Court has previously permitted *in camera* review of a settlement of FLSA claims in *Rehana Bibi v. Mir Shakil-Ur-Rahman, et al.*, Case No. 1:20-cv-01478 (LMB/JFA), Dkt. Nos. 183, 184, 187, 188.

Several of the non-monetary terms of the proposed settlement, including a confidentiality agreement, non-disparagement agreement, and general release[1] of claims through the settlement date often draw extra scrutiny when included in FLSA settlements. Here, however, such agreements benefit both the Plaintiffs and Defendants, and are warranted by the circumstances of the case. The Northern Virginia Korean restaurant community is a tight-knit one, and both Defendants and Plaintiffs will continue to exist in it after this matter is resolved. Furthermore, this lawsuit has been marked by some level of acrimony between the Parties. These bilateral releases, confidentiality provision, and non-disparagement agreements, then, are not intended to insulate any Party from accountability or to create a long-term burden on their rights, but to help the Parties comfortably coexist after this matter has been resolved. In addition, the filings already on the record in this case provide sufficient notice of the claims, alleged improper practices, and facts in this matter in a manner open to public scrutiny.

### b.    Applicable Factors for Evaluating FLSA Settlements

Courts approve FLSA settlements that are "fair, adequate, and reasonable." *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 594 (E.D. Va. 2016). There is a "strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed." *Id.* (internal quotation marks omitted). In the Fourth Circuit, these factors are: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of Plaintiffs' success on the merits; and (6) the amount of the settlement in relation to the potential

---

[1] Plaintiffs' Counsel has consulted with Plaintiffs to confirm that, to the best of Plaintiffs' knowledge, they do not have any other outstanding claims against Defendant that they would be releasing. *See* Elkin Decl. ¶ 30.

recovery. *Id.* (quoting *Lomascolo v. Parsons Binckerhoff. Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173–74 (4th Cir. 1975))). Courts may also consider the financial health of the defendant. *See, e.g.*, *Poole v. Tire Recycling Services of Florida, Inc.*, No. 2:18-cv-0810, 2020 WL 1496151, at *7 (M.D. Fla. Feb. 24, 2020) ("The undersigned also places great weigh on the fact that the Defendants appear to be insolvent or nearly insolvent and that Plaintiff may never recover any money on his FLSA claim unless Defendants are incentivized to resolve the case on a negotiated basis.").

As set forth below, under these factors, the proposed settlement terms are fair and reasonable and should be approved. The settlement represents a good faith compromise of the Parties' *bona fide* dispute regarding Defendants' overtime calculation and tip polling policies under the FLSA and Virginia wage and hour law. This compromise was reached after arms-length negotiations between the Parties.

## 1. The Extent of Discovery

The Parties completed discovery on issues of both liability and damages. Specifically, the Parties have exchanged interrogatories and documents including payroll and timekeeping documents used to complete damages models. Elkin Decl. ¶ 20. Furthermore, Defendants have taken the deposition of both Plaintiffs, and Plaintiffs have taken depositions on multiple 30(b)(6) topics, including Defendants' tip pool policies and practices and Defendants' pay and overtime pay policies and practices. Plaintiffs also deposed Defendant Ellie Il Young Shin. *Id.* The Parties have therefore "conduct[ed] sufficient discovery to fairly evaluate the liability and financial aspects of the case." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *11 (E.D. Va. Sept. 28, 2009) (internal quotation marks and alteration omitted).

## 2. The Stage of the Proceedings, Including the Complexity, Expense, and Likely Duration of the Litigation

As it stands, the Parties have completed discovery, but have not filed any dispositive motions, nor has this action been bifurcated in any way between liability and damages. Based on the discovery record, this litigation will likely involve summary judgment motions and a trial—along with their attendant timelines and costs—to fully settle the various legal and factual questions present in this case. Absent settlement, the Court or a jury would have to decide issues of both liability and damages. Plaintiffs' Count One, Dkt. 21 ¶¶ 53–66, alleges, *inter alia*, that Defendants required Plaintiffs to participate in improper tip pooling arrangements by (1) requiring that Plaintiffs share their tips with assistant managers, and (2) retaining from Plaintiffs' tips an amount equal to 3% of their sales. This claim would be complex to resolve, and would require resolving factual questions relating to: (1) the genesis, agreement, and administration of the assistant manager tip pool; (2) the duties performed by the assistant managers, the proportion of time they performed those duties, and the proportion of the tip pool they received; (3) the actual disposition of the 3% withholding; (4) the substance of the notice given to the employees from whom the 3% was allegedly taken, as well as to the busboys to whom the 3% was allegedly given; to the extent that the 3% was not solely retained by the restaurant, whether it was provided to busboys directly, indirectly, or through some other mechanism; and (5) whether Defendants can establish that they acted with both subjective good faith and objective reasonableness in their efforts to comply with the FLSA. There is reason to believe that there is sufficient conflicting evidence in the record to make a summary judgment motion potentially (although not certainly) inadequate to decide these issues, and that deciding them would thus require a trial.

Furthermore, Count One would require the resolution of legal questions relating to the status of the assistant managers and their participation in the tip pool, including whether and to what extent they were entitled to participate in the tip pool for periods of time when they were

performing any non-managerial duties, along with a determination of what duties might be considered non-managerial. Additionally, the sufficiency of the substance of any notice provided to the employees who had money deducted from their paychecks for any tip pool would need to be litigated, along with the substance of the notice provided to the employees who allegedly received such money. Furthermore, based on the factual record developed in summary judgment or at trial, the Court might also need to decide the extent to which money from a tip pool must be provided directly to the employees whose wages it is alleged to support, versus the extent to which it may support their wages indirectly. All of these are legal issues that will require briefing, argument, and analysis.

Plaintiffs' Count Two, Dkt. 21 ¶¶ 67–75, is more likely to be decided at the summary judgment phase. Liability can be more easily determined from Defendants' records alone, and the law regarding the proper calculation of the regular rate under the FLSA is more straightforward. Nevertheless, liability would be contested, and damages would still need to be determined. Damages are also likely be determined in a contested manner due to the need to determine an appropriate method for compensating Plaintiffs' damages during weeks where Defendants' payroll and timekeeping records provide insufficient information to determine damages—a not insubstantial portion of the recovery period.

Plaintiffs' Count Three, Dkt. 21 ¶¶ 70–79, is largely a recitation of Plaintiffs' FLSA claims under Virginia wage and hour law. The damages and liability determinations for Count Three would largely overlap with the determinations for Counts One and Two. *See* Va. Code §§ 40.1-29.2 & 40.1-29(J) (incorporating the remedies and procedures of the FLSA).

Furthermore, the Court or jury would need to decide whether Defendants could avoid the imposition of otherwise-mandatory liquidated damages by proving that their actions were done in

good faith and that they had reasonable grounds to believe that they did not violate the FLSA under 29 U.S.C. §§ 216(b), 260.

Accordingly, the complexity of these proceedings is quite high, as is the potential for future commitment of time and expenses. This case has "advanced to a stage sufficient to permit the Parties . . . to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial of this case." *Lomascolo*, 2009 WL 3094955, at \*11. This factor therefore weighs in favor of approval.

### 3.    The Possibility of Fraud or Collusion

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Lomascolo*, 2009 WL 3094955, at \*12. The settlement was procured by arms-length negotiations between the Parties, *see* Elkin Decl. ¶ 32, and the Parties only entered into the agreement after consultation with their counsel. *Id.* Given Counsels' zealous representation of their clients in this matter—as exhibited by, *inter alia*, Defendants' challenge to Plaintiffs' motion for conditional certification, the taking of depositions of both Plaintiffs and Defendants, and the multiple rounds of offers and counteroffers—there is no evidence of collusion.

### 4.    Plaintiffs' Counsel's Experience in Wage and Hour Litigation

Plaintiffs' Counsel are locally and nationally recognized leaders in the field of wage and hour law. Elkin Decl. ¶¶ 2–3, 8–13. Plaintiffs' lead counsel, Molly Elkin, has 30 years of experience litigating, trying, and settling FLSA cases. *Id.* ¶¶ 2–3. This experience is clear in the nature of Plaintiffs' claims, which require sophisticated knowledge of the relevant FLSA statues, regulations, and case law to recognize, investigate, plead, and shepherd through litigation. Notably, Plaintiffs were seemingly able to ward off any challenge to the legal sufficiency of their complaint

under Rule 12(b)(6), as well as to adeptly navigate Defendants' opposition to Plaintiffs' initial motion for collective action certification. As discussed below, this experience has allowed Plaintiffs' Counsel to secure a substantial settlement in the face of uncertainty and complexity.

### 5.    Probability of Plaintiffs' Success on the Merits

While Plaintiffs believe that their legal positions are strong, "[w]hatever the relative merits of the parties' legal positions, there is no risk-free, expense-free litigation." *Sheick v. Auotomotive Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *18 (E.D. Mich. Oct. 18, 2010). As described above in Section II.b.2., this case involves several contested questions of law and fact that could significantly impact both liability and damages, leaving Plaintiffs with a significantly reduced recovery, or no recovery at all. Furthermore, as discussed further below, given the state of the law on certain issues relating to tip pooling in particular—and the firmness of each party's conviction—there is a chance of appeal from a decision in either direction.

### i.    The 3% Deduction

Defendants contend that busboys receive the proceeds of the 3% deduction at all times material to this lawsuit, and maintained as much during their depositions. On the other hand, Plaintiffs disagree and point to the payroll records produced by Defendants, which they contend show the busboys receiving none of the proceeds from the 3% deduction until after Plaintiffs filed their lawsuit. As such, the question of liability on this point may turn on the relative credibility of the witnesses at trial. Furthermore, Defendants' contentions raise the related question of the scope of an employer's liability where, even if it does not directly pass along the proceeds of a tip pool to other employees, it nevertheless uses those proceeds to *subsidize* those other employees' wages. Plaintiffs contend that such an arrangement remains a violation of the FLSA's rules regarding tips, *cf. Compere v. Nusret Miami, LLC*, 28 F.4th 1180, 1181-82 (11th Cir. 2022) (holding that, because

10

an 18% service charge was *not* considered a tip, restaurant could rely on it to subsidize direct minimum wage and overtime obligations), and regarding the substance of the notice that must be given to employees regarding the terms of tip pools and the tip credit, *see* 531.52(a), 513.54(c), 531.59(b). Nevertheless, this is a more complex—and therefore riskier—inquiry than the one into whether an employer has retained tips for itself, which is plainly illegal. *See* 29 U.S.C. 203(m)(2)(B). Such risk is heightened if the concept must be articulated to a jury.

The 3% tip pool damages make up a substantial amount of Plaintiffs' potential recovery because, for tip pool violations, employees are entitled to: (1) the disgorgement of the tips collected via the tip pool; (2) the amount of the tip credit the employer took on the employee's behalf; and (3) an amount equal to (1) and (2) as liquidated damages. 29 U.S.C. 216(b). As such, any heightened level of risk to the tip pool damages weighs heavily on Plaintiffs' chances of a successful recovery, and in favor of approving the settlement.

### ii.    Other Considerations Weighing on Plaintiffs' Probability of Success

In addition to potential complex legal and factual questions surrounding the 3% deduction, Plaintiffs would also need to prove that the Assistant Managers were ineligible to participate in the tip pool and respond to a defense that they only received tips from the tip pool when they engaged in non-managerial, tip-producing work.

Additionally, Plaintiffs would need to prove that Defendants calculated their overtime incorrectly on each day that that they: (1) worked overtime and (2) were paid less than the minimum wage, as well as make a showing that they were entitled to damages on days where Defendants' records are insufficient to determine Plaintiffs' overtime entitlement or the method of calculating any overtime. This would require delving into the FLSA's recordkeeping requirements and associated penalties and carries a risk of a reduced or discounted recovery. Furthermore, given

11

the complexity the overtime calculation—as well as the various legal issues discussed above regarding tip pooling—Defendants could possibly assert a good faith defense to the FLSA's liquidated damages provision, halving or otherwise reducing Plaintiffs' damages. 29 U.S.C. § 260. As such, while Plaintiffs believe in their case, it nevertheless contains risk. This weighs in favor of approval.

### 6.    Amount of the Settlement in Relation to the Potential Recovery

As discussed above, the timekeeping records produced by Defendants were not complete, so Plaintiffs cannot say with certainty what their maximum potential recovery is. Nevertheless, from the data available, Plaintiffs have calculated an estimate of the amounts owed to them. Using this estimate, as well as assuming a maximum recovery of liquidated damages, the settlement amount here reflects a recovery of 100% of backpay plus 21% of liquidated damages for the two plaintiffs.[2] Plaintiffs will recover this full amount, without paying any contingency fee, as the Parties negotiated a reasonable attorney's fee separately. This is a substantial monetary recovery, and is fair, reasonable, and adequate given the substantial risks, time, and burden of continuing through summary judgment motion practice, trial, and any putative appeals. Additionally, Defendants have changed their overtime calculation and tip pooling practices going forward.

Furthermore, the risks here are not just limited to litigation. Defendants' counsel has stated that Defendants are in a financially precarious state, *see* Elkin Decl. ¶ 11, and external events, such as the abrupt closing and lockout of the Qui's South Riding location over seeming nonpayment of rent, are consistent with such precarity.[3] Were Plaintiffs to continue litigating this case, there is

---

[2] As discussed above, it is Defendants' desire that the amounts of the settlement agreement be submitted to the Court for *in camera* review, so this section uses only percentages.

[3] *See, e.g.*, The Burn, *Doors Chained Shut at the Qui Korean BBQ in Loudoun*, (March 25, 2024), available at: https://www.theburn.com/2024/03/25/doors-chained-shut-at-the-qui-korean-bbq-in-loudoun/ (last accessed 5/20/24).

some risk that they would not be able to recover any judgment that they eventually secured. Finally, it is worth noting that Plaintiffs' claims will be dismissed without prejudice. As such, this settlement reflects a fair, reasonable, and adequate resolution of this action, and should be approved.

### III.    Plaintiffs' Attorneys' Fees and Expenses are Reasonable

An award of fees and expenses is mandatory under the FLSA to the prevailing plaintiff. 29 U.S.C. § 216(b). Significantly, the FLSA "contemplates that the wronged employee should receive his full wages plus the penalty without incurring any expenses for legal fees or costs." *Poulin v. Gen. Dynamics Shared Res., Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *1, (E.D. Va. May 5, 2010) (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)). Therefore, "the FLSA requires judicial review of the reasonableness of counsel's legal fees to ensure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Id.*

Under the above agreement, Plaintiffs have negotiated a separate recovery of $68,425.57 in fees and $11,574.43 in expenses from the Defendant. *See* Elkin Decl. ¶¶ 28–29. As set forth below, this fee and expense award is reasonable based on Fourth Circuit criteria and should be approved.

### a.    Criteria for Determining the Reasonableness of Attorneys' Fees

"The Court typically evaluates the reasonableness of attorneys' fees by comparing the requested amount to the lodestar amount, which is defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Epps v. Scoffolding Sols. LLC.*, 2:17-cv-00562, 2019 WL 6888546, at *4 (E.D. Va. Dec. 11, 2019) (quoting *Grissom v. Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008)). *See also Mercer v. Duke Univ.*, 401 F.3d 199, 211 (4th Cir. 2005) ("[T]he

determination of a reasonable fee is an intensively fact-bound matter for the trial court to determine in the sound exercise of its discretion."). The Fourth Circuit has instructed district courts to consider the factors identified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) (the "Johnson Factors") in analyzing a fee request:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Randolph v. Powercomm Constr., Inc.*, 715 F. App'x 227, 230 n.2 (4th Cir. 2017); *see also Robinson v. Equifax Info Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009). Furthermore, "[t]he Court need not address all twelve factors independently because such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Signature Flight Support Corp. v. Landow Aviation L.P.*, 730 F. Supp. 2d 513, 520 (E.D. Va. 2010).

**b.    The Fees Here are Reasonable Based on an Analysis of the *Johnson* Factors**

As described further below, Plaintiffs' counsel's lodestar—the amount of fees they have reasonably and necessarily incurred in the litigation of this matter through May 14, 2024—is $185,054.00, with an additional $11,574.43 in advanced expenses. Elkin Decl. ¶¶ 28–29. Thus, the negotiated amount of $68,425.57 in fees and $11,574.43 in expenses is reasonable. Plaintiffs' counsel were willing to accept a substantial discount on their fees to achieve the settlement. Plaintiffs were given the opportunity to object to the settlement, and played the guiding role in its negotiation. Elkin Decl. ¶ 32. In addition, application of the twelve *Johnson* factors further

supports approval of the attorneys' fees and expenses set forth in the settlement.

### 1.    Time and Labor Expended

The time and labor expended by Plaintiffs' counsel in litigating this case has been reasonable and necessary, particularly given the significant work performed. In addition to the pre-filing investigation and research into the complicated methodologies used to calculate overtime for employees paid the sub-minimum, tipped wage, this case also involved a necessary amendment to the complaint, and a contested motion for conditional certification requiring both an opening and reply brief. Each of these briefs required extensive research and drafting: the opening because of the complexity of the issues involved, and the reply because Defendants raised novel constitutional and state law challenges to conditional certification and also asserted that Plaintiffs had applied the wrong standard to their request for conditional certification. *See* Dkt. 30 at 4, 5–7; Dkt. 31 at 2–4; 15–20. Plaintiffs' motion also required working with Plaintiffs to draft and finalize declarations, as well as drafting proposed mail, email, text, and reminder notices. *See* Dkt. 23, 23.1–23.2, 23.4–23.6.  Moreover, following discovery, Plaintiffs' counsel spent significant time preparing their renewed motion for conditional certification and but for the execution of the settlement agreement, were in a position to file said motion. Elkin Decl. ⁋ 21.

Furthermore, this case involved a substantial amount of discovery on a tight timeline. Defendants served 22 individual interrogatories and 13 requests for production on each Plaintiff, and Plaintiffs served 4 interrogatories and 28 requests for production on Defendants. Additionally, Defendants took the deposition of both Plaintiff No and Plaintiff Cho, and Plaintiffs deposed Defendant Ellie Il Young Shin and took 30(b)(6) depositions. Because of the relatively short discovery timeline, Plaintiffs' Counsel had to conduct discovery, engage in settlement negotiations, and begin drafting their renewed motion for class certification all in parallel—a time-

consuming combination of tasks. Plaintiffs' counsel had to further engage in significant damages analysis, legal research, and ongoing client consultation. This resulted in Plaintiffs' counsel performing over 341 hours of work litigating this matter through May 14, 2024. Elkin Decl., ¶ 26. To date, Plaintiffs' counsel have not received any payment for this work.

### 2.    Novelty and Difficulty of Questions Raised

As discussed above in Sections II.b.2 and II.b.5, this case involved a variety of complex and not-entirely-settled legal questions. As an initial matter, Plaintiffs regular rate claim requires specialized knowledge of the FLSA to identify, understand, and plead. Furthermore, the issues relating to tip pooling are complex and not fully expressed in statute, regulation, or case law. As such, absent a settlement, the Court or a jury would likely have to decide a variety of imprecise factual issues and their intertwined complex or novel legal questions.

### 3.    Skill Required to Properly Perform the Legal Services Rendered

As discussed above in Section II.B.4., the complex and technical nature of the wage and hour issues raised required specialized skill to recognize, plead, and shepherd through briefing, discovery, and, ultimately, a satisfactory settlement. As set forth in the attached declaration of Molly A. Elkin, Plaintiffs' counsel possess significant expertise and specialized skill in this area of the law. *See* Elkin Decl. ¶¶ 2–17. Indeed, Plaintiffs' counsel has worked on a number of cases involving tipped workers, making them particularly valuable to Plaintiffs during their litigation of the instant case. *Id.* ¶¶ 3–15.

### 4.    Attorney's Opportunity Costs in Pressing the Instant Litigation

McGillivary Steele Elkin LLP has only 13 attorneys, so it must carefully monitor the amount of time required by existing cases in determining whether to accept or pursue other matters. Elkin Decl. ¶ 27. Given the complexity of the issues, briefing, and research, and the breadth and

16

pace of discovery and settlement negotiations, this case required substantial time and effort, which precluded the involved attorneys from performing other available, fee-generating work during the relevant time period. *Id.* This was a factor considered by Plaintiffs' counsel in deciding what fee-generating cases and other matters it could, and could not, pursue during this time. *Id.*

### 5.   Customary Fee for Like Work

Plaintiffs' counsel's hourly rates for attorney time in this case range from $430 to $780 per hour. The fee rates utilized, which are further set forth in Exhibit A to the Declaration of Molly A. Elkin, are provided by the "Vienna Metro Matrix,"  as laid out in *JK Moving & Storage Inc. v. Winmar Construction, Inc.*, which provides "the customary rates" for litigation in the "Northern Virginia area." 1:17-cv-1213, 2018 WL 4365573, at *3 (E.D. Va. June 20, 2018) (citing declaration at *Vienna Metro LLC v. Pulte Home Corp.*, No. 1:10-cv-502, Dkt. 263 (E.D. Va. Aug. 24, 2011)); Elkin Decl. ⁋ 19 & Ex. A. The *Vienna Metro* rates have been used repeatedly in FLSA cases. *See, e.g.*, *Diaz v. RM Contractor, LLC*, 1:21-cv-1192, 2022 WL 2980892, at *7 (E.D. Va. June 17, 2022); *Rodkey v. Griffin*, 1:20-cv-0329, 2020 WL 9459291, at *10 (E.D. Va. Nov. 30, 2020); *Gomez v. Seoul Gool Dae Gee Inc.*, 434 F. Supp. 3d 381, 386 (E.D. Va. 2020); *Cho v. Joong Ang Daily News Washington, Inc.*, No. 1:18-cv-1062, 2020 WL 1056294, at *5 (E.D. Va. Mar. 4, 2020); *Schmidt v. FCI Enterprises LLC*, No. 1:18-cv-01472, 2020 WL 2748500, at *4 (E.D. Va. Jan. 3, 2020), *rev'd on other grounds*, 3 F.4th 95 (4th Cir. 2021). Notably, the rates published in *JK Moving & Storage*—which Plaintiffs rely upon in the instant litigation—are the same rates used in the original *Vienna Metro* case in 2011. *See* 2018 WL 4365573, at *3 (E.D. Va. June 20, 2018) (citing declaration at *Vienna Metro LLC*, No. 1:10-cv-502, Dkt. 263 (E.D. Va. Aug. 24, 2011). These rates are therefore almost 13 years old at this point, despite any increase in typical legal fees—and any inflation more broadly—that has occurred in that time.

### 6.    Attorneys' Expectations at the Outset of the Litigation

This case was brought under the FLSA and Virginia wage and hour law, both of which provide for attorneys' fees for prevailing plaintiffs. 29 U.S.C. § 216(b); .; Va. Code §§ 40.1-29.2 & 40.1-29(J).  While Plaintiffs entered into a contingency fee arrangement with Plaintiffs' counsel, no contingency fee will be taken from Plaintiffs' settlement awards. Counsel's expectations at the outset of the litigation were that any recovery would depend on the success achieved on Plaintiffs' claims. Plaintiffs benefited from experienced counsel handling this case, and, given the fee-shifting nature of the operative statutes, counsel at McGillivary Steele Elkin bore all litigation expenses and assumed the risk of non-payment if the Plaintiffs' claims were ultimately unsuccessful.

### 7.    Time Limitations Imposed by the Client or Circumstances

As the *Johnson* court explained, "Priority work that delays the lawyer's other legal work is entitled to some premium." *Johnson*, 488 F.2d at 718. It is well-known that the U.S. District Court for the Eastern District of Virginia operates under stringent time limitations for civil cases. As such, extensive efforts were undertaken in a short period of time, on behalf of Plaintiffs to actively satisfy their discovery obligations and meet motions deadlines in addition to engaging in ongoing settlement negotiations with the Defendant.

### 8.    The Amount in Controversy and the Results Obtained

The degree of success obtained is "the most critical factor" in determining a fee award. *See Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). Here, this factor supports approval of the fee requested given the substantial success achieved through settlement. As discussed above in Section II.b.6., after the payment of attorneys' fees and expenses, Plaintiffs will recover 100% of backpay plus liquidated damages equal to 21% of the backpay. Given the uncertainty surrounding their primary claim—the 3% deduction—and the heavily-contested, long road ahead if this case does

not settle, such a recovery represents a substantial victory for Plaintiffs.

Furthermore, the fact that Plaintiffs opted to settle without renewing their motion for collective certification is immaterial to an evaluation of the results obtained. As courts have made clear, "an FLSA collective action is not representative." *Clark v. A&L Homecare and Training Center, LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023). Conditional certification and "the notice determination has zero effect on the character of the underlying suit." *Id.* Rather, putative plaintiffs who receive notice "join . . . [and] become parties with the same status in relation to the claims of the lawsuit as do the named plaintiffs." *Id.* (quotation marks omitted). With or without notice, the only putative plaintiffs with a material interest in an FLSA action are those who actually join and become "party plaintiffs, 29 U.S.C. § 216(b), and the only measure of success in an FLSA action is the recovery secured for such party plaintiffs. Here, that recovery is quite substantial.

To the extent that Plaintiffs' Counsel's hours should be discounted some amount for work on any motion that was unsuccessful or unrenewed, the substantial discount that Plaintiffs' Counsel is taking on their lodestar already accounts for that. As discussed above, Plaintiffs' lodestar is $185,054.00, yet Plaintiffs will recover only $68,425.57 in fees under the settlement, reflecting a discount equal to 67% of their fees.

Plaintiffs' counsel zealously represented their clients and exercised good billing judgment. Elkin Decl. ¶ 24. In *Castel v. Advantis Real Estate Services Company*, the court explained that, in such situations, an "award of attorney fees encourages the vindication of employees' rights" and "note[d] that a substantial reduction based on the amount of damages awarded to plaintiffs would serve as an incredible disincentive for attorneys to accept FLSA cases." *Castel v. Advantis Real Estate Servs. Co.*, 2:07-cv-0435, 2008 WL 3348774, at *4 (E.D. Va. Aug. 8, 2008).

**9.    The Experience, Reputation and Ability of the Attorney**

As discussed above, Plaintiffs' Counsel are highly skilled with extensive experience in this area of the law and are held in high regard amongst wage and hour practitioners. Lead counsel, Molly A. Elkin, has 30 years of civil litigation experience, has litigated multiple restaurant wage and hour cases, and has been appointed to a number of positions reflecting her standing in the wage and hour field. Elkin Decl. ¶¶ 2–16.

### 10. The Undesirability of the Case within the Legal Community in Which the Suit Arose

As set forth in Factor 6, Plaintiffs brought this case on a contingency fee basis and under fee-shifting statutes, so Plaintiffs' counsel accepted knowing they would receive payment only if the Plaintiffs won or settled. Restaurant cases are often undesirable, because restaurants themselves often have unsophisticated pay records and are a collection risk with a transient workforce, making it difficult to add plaintiffs or to speak with witnesses to investigate the merits of the cases. At the same time, restaurants are governed by complex and unique pay rules, especially related to tipping, which can require a disproportionate amount of research, investigative, and drafting work relative to the expected recovery.

### 11. The Nature and Length of the Professional Relationship Between Attorney and Client

Plaintiffs' counsel represented the Plaintiffs in nearly eight months of litigation and have worked closely and consistently with Plaintiffs to educate them on their claims and the litigation process, investigate the nature of the claims, conduct written and in-person discovery, and reach an excellent settlement.

### 12. Attorneys' Fee Awards in Similar Cases

The requested fees—which represent approximately 37% of Plaintiffs' lodestar after payment of Plaintiffs' necessarily-incurred expenses (see below)—are in line with fee awards

approved in this District in FLSA cases. Furthermore, it is acceptable that the attorneys' fees are "more than the plaintiffs' recovery." *Carroll v. Northampton Restaurants, Inc.*, No. 2:21-cv-0115, 2023 WL 1223442, at *14 n.18 (E.D. Va. Mar. 21, 2024). "This is 'not an uncommon result' in FLSA cases, where attorneys' fees can 'substantially exceed damages.'" *Id.* (quoting *Cho v. Joong Ang Daily News Washington, Inc.*, 1:18-cv-1062, 2020 WL 1056294, at *10 (E.D. Va. Mar. 4, 2020)). Thus, in *Carroll* the Court approved attorneys' fees equal to roughly twice the amount recovered for Plaintiffs and reflecting approximately 83% of the initial lodestar amount. *Id.* at *14– 15; *see also Cho*, 2020 WL 1056294, at *10–11 (approving attorneys' fees equaling roughly 2.5 times the recovery); *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 370 (E.D. Va. 2021) (approving attorneys' fees equaling less than half of the lodestar and approximately two-thirds of the recovery); *Hoffman v. Bear Chase Brewing Co., LLC*, , 2024 WL 1472793, at *12 (E.D. Va. Mar. 19, 2024) (approving attorneys' fees of approximately four times the recovery and 70% of the initial lodestar); *Hargrove v. Ryla Teleservs., Inc.*, 2:11-cv-0344, 2013 WL 1897027, at *7 (E.D. Va. April 12, 2013) (approving attorneys' fees equaling less than half of initial lodestar amount).

### b.     Plaintiffs' Attorneys' Expenses are Reasonable

Plaintiffs also seek an award of $11,574.43 in costs. The FLSA and relevant Virginia wage and hour law provide for an award of costs, in addition to fees, to a prevailing plaintiff. 29 U.S.C. § 216(b); Va. Code §§ 40.1-29.2 & 40.1-29(J). It is well established that an award of attorneys' fees under a fee shifting statute such as the FLSA also includes an award of the out-of-pocket costs incurred in sustaining the litigation, including copying costs, transcript costs, and legal research costs, which are a customary part of attorneys' fees for professional services. *Missouri v. Jenkins*, 491 U.S. 274, 285-89 (1989). Here, all of the expenses sought are for items such as filing fees,

transcripts of depositions, legal research, copying costs, damages modeling costs, and other costs that are a customary part of attorneys' fees for professional services. *See* Elkin Decl. ⁋ 28 & Exh. C. These expenses were necessarily incurred in the preparation and presentation of this litigation, are normally billed to the firm's paying clients, and should be approved. *Id.*

## IV.    Conclusion

For the above reasons, the Parties respectfully request that this Court approve the settlement as fair and reasonable, inclusive of an award of attorneys' fees and expenses in the amount of $80,000.

Dated: May 24, 2024                    Respectfully submitted,

*/s/ Molly Elkin*
Molly A. Elkin (Va. Bar No. 40967)
Sarah M. Block (*Pro Hac Vice*)
Patrick J. Miller-Bartley (*Pro Hac Vice*)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., NW
Suite 1000
Washington, DC 20005
Telephone: (202) 833-8855
Fax: (202) 452-1090
mae@mselaborlaw.com
smb@mselaborlaw.com
pmb@mselaborlaw.com

*Counsel for Plaintiffs*

*SEEN AND CONSENTED TO WITHOUT OBJECTION*

*J. Chapman Petersen*
J. Chapman Petersen, Esq., VSB #37225
Christopher T. Robertson, Esq., VSB #93732
CHAP PETERSEN & ASSOCIATES, PLC

3970 Chain Bridge Road
Fairfax, Virginia 22030
(571) 459-2510 – Direct Dial
(571) 459-2307 – Facsimile
jcp@petersenfirm.com
cr@petersenfirm.com

### CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2024, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system which will send notification Counsel for Defendants:

J. Chapman Petersen, Esq., VSB #37225
Christopher T. Robertson, Esq., VSB #93732
CHAP PETERSEN & ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, Virginia 22030
(571) 459-2510 – Direct Dial
(571) 459-2307 – Facsimile
jcp@petersenfirm.com
cr@petersenfirm.com

*/s/ Molly A. Elkin*
Molly A. Elkin (Va. Bar No. 40967)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., NW
Suite 1000
Washington, DC 20005
Telephone: (202) 833-8855
Fax: (202) 452-1090
mae@mselaborlaw.com

*Attorney for Plaintiffs*

23